**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NYRAN DALE THOMPSON,** | : | |
| **Plaintiff** | : | **CIVIL NO. 3:CV-16-1529** |
| v. | : | **(Judge Caputo)** |
| **DEPUTY WARDEN CARVER,** *et al.*, | : | |
| **Defendants** | : | |

**M E M O R A N D U M**

**I. Introduction**

Mr. Thompson, a former inmate, proceeds *pro se* and *in forma pauperis* in this action concerning events that transpired at the Monroe County Correctional Facility (MCCF) in Stroudsburg, Pennsylvania.[1] He names the following individuals as defendants: Deputy Warden Carver; Lt. Joynes; John Doe Corrections Officer (CO) on the 3 - 11 p.m. shift; State Police (PSP) Trooper Depew; Monroe County District Attorney's Office; and Jason Labar of the Monroe County Public Defenders Office. (ECF No. 23, Am. Compl.)

As Mr. Thompson is proceeding *in forma pauperis* in this action, the Amended Complaint is before the Court for screening pursuant to 28 U.S.C. § 1915. For the following reasons, the Amended Complaint will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) without leave to amend.

---

[1] Mr. Thompson initiated this action while incarcerated. He is no longer incarcerated and lives in Binghamton, NY.

## II.     Standard of Review

The Court is required to screen Mr. Thompson's Amended Complaint pursuant to 28 U.S.C. § 1915A(a) and 28 U.S.C. § 1915(e)(2)(B)(ii).  The Court must dismiss a complaint, or any portion thereof, if the prisoner has raised claims that are legally frivolous, malicious, fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

The legal standard for dismissing a complaint for failure to state a claim under § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to a motion filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).  Under Rule 12(b)(6), the Court must "take as true all the factual allegations of the [complaint] and the reasonable inferences that can be drawn from them, but we disregard legal conclusions and recitals of the elements of a cause of action, supported by mere conclusory statements."  *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010)(quotation marks omitted and citation omitted).

"The test in reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6) is whether, under any 'plausible' reading of the pleadings, the plaintiff would be entitled to relief."  *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764 (3d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)).  To satisfy this standard, a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, *Twombly,* 550

U.S. at 555, 127 S.Ct. at 1964. Nonetheless, a complaint has to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570, 127 S.Ct. at 1974. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965). "[L]abels and conclusions" are not enough, *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964-65, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id*., 127 S.Ct. at 1965 (quoted case omitted).

A complaint filed by a *pro se* plaintiff must be liberally construed and "held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Fantone v. Latini*, 780 F.3d 184 (3d Cir. 2015)(citing *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972)); *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). Yet, even a pro se plaintiff "must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted). A plaintiff is to be granted leave to file a curative amended complaint even when he does not seek leave to amend, unless amendment would be inequitable or futile. *See Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 861 (3d Cir. 2014). "Under Rule 15(a), futility of amendment is a sufficient basis to deny leave to amend." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010). "Futility 'means that the complaint, as amended, would fail to state a claim upon which relief

could be granted.'" *Id.* (quoting *In re Merck & Co. Sec., Derivative, & ERISA Litig.*, 493 F.3d 393, 400 (3d Cir. 2007)).

## III.     Background

### A.     Procedural History

Mr. Thompson initiated this action in July 2014 in the United States District Court for the Eastern District of Pennsylvania. The matter was transferred to this Court in 2016 as the MCCF is located in this district. Upon our initial screening of the Complaint, it was dismissed based on the Court's belief Mr. Thompson had not paid requisite initial partial filing fee. (ECF No. 18.) Mr. Thompson then sought reconsideration of that order and provided evidence of his payment of the filing fee to the Eastern District of Pennsylvania. The Court then reopened the matter. (ECF No. 20.)

The Court then proceeded to screen Mr. Thompson's Complaint pursuant to 28 U.S.C. § 1915A(a) and 28 U.S.C. § 1915(e)(2)(B)(ii). On May 23, 2017, the Court dismissed the Complaint for failure to state a claim. *Thompson v. Carver*, Civ. No. 3:CV-16-1529, 2017 WL 2243027 (M.D. Pa. May 23, 2017); *see also* ECF No. 22. Mr. Thompson was granted leave to file an amended complaint exclusively as to his failure to protect claim. (ECF No. 20, p. 1.) On June, 9, 2017, Mr. Thompson filed an Amended Complaint. (ECF No. 23, Am. Compl.)

**B.     Allegations of the Amended Complaint**

On April 11, 2014, at approximately 9 p.m., while housed at the MCCF, Mr. Thompson was sexually assaulted by another inmate, Christopher Foreman. (ECF No. 23-2, Am. Compl.) Mr. Thompson claims "Defendants put a known sexual predator in a cell with" him. (*Id*., p. 4.) He claims Defendants "had prior knowledge that this inmate had to be separated from general confinement inmates". (*Id*.) After the assault, his request "to be removed from the cell [was] denied by Correction Officer, 3 - 11 Shift." (*Id*., p. 5.)

On April 15, 2014, Mr. Thompson filed grievance #140414011 at the MCCF. (*Id*., pp. 12 - 13.) He stated that he "was approached in a sexually (sic) manner and touched on [his] private part by another inmate." (*Id*., p. 12.) Mr. Thompson remained housed with his assailant until the following morning. (*Id*.)

On April 15, 2014, upon returning from an unrelated court appearance, Mr. Thompson was advised he would be double celled with a different inmate. (*Id*., p. 13.) He asked for a single cell as he was still "not over the incident and still shakeing (sic) up [and that he did] not feel safe." (*Id*., p. 13.) Lt. Joynes replied that he would have to request protective custody in order to receive a single cell. (*Id*.) After grieving this issue to Deputy Warden Carver, Mr. Thompson was temporarily assigned a single cell. (*Id*., p. 12.) Deputy Warden Carver noted that Mr. Thompson had not requested to be housed alone during their earlier conversation. (*Id*.) Plaintiff claims "Deputy Warden did nothing to help him" after the incident. (*Id*., p. 5.) He hoped "Warden Carver would look into changing the rules on when there is an incident in the night, that an inmate should be able to leave that cell and not have to stay in that type of

environment." (*Id*.) He asserts "Lt. Joynes showed negligence when informed of the incident and showing no compassion" when he denied his request for a single cell the day after the accident. (*Id*.)

Following the incident, Mr. Thompson was interviewed by Trooper Depew. (*Id*.) Trooper Depew advised him that "this was not the first time this predator had done this ... and assured plaintiff that the predator will be prosecuted." (*Id*.) Eventually Mr. Thompson was transferred "back to New York State Prison". (*Id*., p. 6.) On May 27, 2015, Mr. Thompson wrote to the Monroe County District Attorney's office concerning the prosecution of his assailant, Mr. Foreman. (*Id*., p. 15.) On June 8, 2015, Detective Wendy Serfass responded to his inquiry. (*Id*.) She advised that Mr. Foreman was charged with Indecent Assault and his preliminary hearing was scheduled for July 14, 2014. (*Id*.) However, due to Trooper Depew's inability to "locate [Mr. Thompson] at the number [he] provided to [Trooper Depew] during [his] initial interview and [he] had been released from the Monroe County Correctional Facility," the charges were withdrawn based on Mr. Thompson's "failure to contact the [Trooper Depew] and advise him of [his] willingness to proceed and [his] whereabouts." (*Id*.) Detective Serfass advised Mr. Thompson that "charges may be re-filed, however; [he] will need to contact Trooper Depew and make [himself] available for the criminal proceedings as they are scheduled." (*Id*.) This information surprised Mr. Thompson because he was still in New York State Prison. (*Id.,* p. 6.)

In November 2015, while detained at the Buffalo Federal Detention Facility, Mr. Thompson received additional correspondence from Detective Serfass. At an undisclosed

time he received a message from Trooper Depew that "he and the District Attorney's Office" would make arrangements to pick [him] up on December 28, 2015." (*Id*., p. 7.) Mr. Thompson never heard from either defendant again and believes "they felt [he] would be deported and never hear from plaintiff again." (*Id*.) On May 19, 2017, Mr. Thompson took the oath of Citizenship and is now a United States citizen (*Id*.) Mr. Thompson claims Trooper Depew and the Monroe County District Attorney's Office "were negligent and failed to prosecute" Mr. Foreman for assaulting him. (*Id*.)

Attorney Jason Labar, a member of the Monroe County Public Defender's Office, "represented [Mr. Thompson] in [his] criminal case and showed no compassion two (sic) what happened to [Mr. Thompson]." (*Id*.) Attorney Labar laughed about the incident with others and "never once asked plaintiff if he needed to talk to a professional for help." (*Id*.) Mr. Thompson spoke with Attorney Labar in May 2014 and then again in June 2015. He "neglected plaintiff in every way possible." (*Id*., p. 8.)

Mr. Thompson claims "the Officer 3-11 pm shift" showed no regard for his safety. When he informed the Officer that he was attacked, he did nothing to remove Mr. Thompson from the cell. (*Id*., p. 8.) When Mr. Thompson asked the Officer to call someone in authority, the Officer refused and told him to wait until the morning as he did not want to do the paperwork. (*Id.*) He claims this Officer failed to protect him from further harm by not removing him from the cell. (*Id*.)

As relief, Mr. Thompson wants the "justice which he rightfully deserves and that the individual who" assaulted him be "prosecuted to the fullest, and not cover[ed] up by the

authorities." (ECF No. 23, p. 2.) He also seeks compensatory damages for physical and mental pain he "still suffers and not getting justice." (ECF No. 23-2, p. 19.)

IV. Discussion

    A. Failure to State a Claim Against Deputy Warden Carver and Lt. Joynes

To successfully state a § 1983 claim, a plaintiff must allege: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct complained of deprived the plaintiff of rights, privileges, or immunities secured by the laws or the Constitution of the United States. *Rehberg v. Paulk*, 566 U.S. 356, 361, 132 S.Ct. 1497, 1501, 182 L.Ed.2d 593 (2012); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 302 (3d Cir. 2016).

The Eighth Amendment requires a prison official to "take reasonable measures to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994). "In order to succeed on a failure to protect claim under § 1983, an inmate must demonstrate that corrections officers acted with deliberate indifference to a substantial risk of serious harm." *Nifas v. Coleman*, 528 F. App'x 132, 135 (3d Cir. 2013) (citing *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001)). Similarly, "a pretrial detainee presenting a failure-to-protect claim must plead that the prison official acted with deliberate indifference to the detainee's health or safety." *Burton v. Kindle*, 401 Fed.Appx. 635, 638 (3d Cir. 2010) (per curiam). "Deliberate indifference" is a subjective standard in that "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (citing

*Beers-Capitol*, 256 F.3d at 125). Thus, a plaintiff must show that the defendant was subjectively aware of the risk of harm to the plaintiff's health or safety, and disregarded it. *See*, e.g. *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979; *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

To establish liability for the deprivation of a constitutional right, an individual government defendant must have personal involvement in the alleged wrongs; liability cannot be predicated on the unconstitutional conduct of their subordinates under a theory of *respondeat superior.* *Iqbal*, 556 U.S. at 676, 129 S.Ct. at 1948; *Santiago v. Warminster Twp*., 629 F.3d 121, 130 (3d Cir. 2010). "It is uncontested that a government official is liable only for his or her own conduct and accordingly must have had some sort of personal involvement in the alleged unconstitutional conduct." *Argueta v. U.S. I.C.E.*, 643 F.3d 60, 71-72 (3d Cir. 2011). This personal involvement can be shown where a defendant personally directs the wrongs, or has actual knowledge of the wrongs and acquiesces in them. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (noting that "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"). A defendant "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 201-202 (3d Cir. 2000).

Mr. Thompson asserts an Eighth Amendment failure-to-protect claim based upon prison officials' deliberate indifference to a substantial threat to his safety when he was placed in a cell with a known sexual predator who ultimately sexually harassed and touched him. However, similar to the identified shortcomings of his original complaint, Mr. Thompson again fails to identify the individual responsible for making the decision to place him in the cell with Mr. Foreman that day. The only prison officials named by Mr. Thompson as defendants are Deputy Warden Carver and Lt. Joynes. Mr. Thompson fails to identify the personal involvement of either of these defendants in the decision to place him in the cell with Mr. Foreman or that they personally knew Mr. Foreman posed a substantial risk of physical harm to him. Mr. Thompson clearly states that his contact with Deputy Warden Carver and Lt. Joynes occurred *after* the event. Thus, he fails to state a failure to protect claim against either of these defendants. To the extent Mr. Thompson alleges they were not sensitive to his need for a single cell following the assault, he also fails to state a claim against these defendants as he does not have a protected liberty interest arising from the Due Process Clause to be assigned to a particular custody level, security classification, or place of confinement. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005)(finding that the Constitution does not give rise to liberty interest in avoiding transfers to more adverse conditions of confinement); *see also Thomaston v. Meyer*, No. 12-4563, 2013 WL 2420891 (3d Cir., Jun. 5, 2013)(holding that denial of inmate's request for single cell is not a deprivation of a protected liberty interest). Moreover, his requests for a single cell occurred *after* he was removed from the cell he shared with Mr. Foreman and does not allege any

subsequent cellmate, prior to his receipt of a single cell, exposed him to harm.  Mr. Thompson fails to state a claim against either Deputy Warden Carver or Lt. Joynes.  Accordingly, his claims against them will be dismissed without leave to amend.

### B. The Monroe County District Attorney, Trooper Depew and Public Defendant Labar are Immune from Suit

"[T]here is no constitutional right to the investigation or prosecution of another." *Sanders v. Downs*, 420 F. App'x 175, 180 (3d Cir. 2011) (per curiam).  The decision whether or not to initiate or prosecute a case is completely discretionary with prosecutors and also is absolutely immunized from a suit for damages.  *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d (1976); *Mazzetti v. N. J. Div. of Child Prot. and Permanency*, Civ. No. 14-8134, 2017 WL 1159726, at *13 (Mar. 27, 2017).  The United States Court of Appeals for the Third Circuit has "found no authority creating a mandatory duty upon [a prosecutor or police officer] to investigate and pursue the prosecution [of others]".  *Schaeffer v. Wilson*, 240 F. App'x 974, 976 (unpublished).  Likewise, no liability attaches under 42 U.S.C. § 1983 for the representation of a criminal defendant, because a public defender does not act under color of law in representing his or her client.  *Polk Cty. v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981).

Here Mr. Thompson faults the Monroe Country District Attorney and Trooper Depew for failing to prosecute Mr. Foreman for assaulting him.  Initially, the Court notes that the defendants did bring charges against Mr. Foreman, but when they could not locate Mr. Thompson, those charges were dropped.  Mr. Thompson learned of these events in 2015

-11-

following his initiation of this action. Regardless of why no further prosecution of Mr. Foreman took place, the decision to prosecute him still remained with the prosecuting attorney. Thus, he fails to state a claim against the Monroe County District Attorney or Trooper Depew. Additionally, without asserting a basis to do so, Plaintiff seeks to hold his criminal public defender, Jason Labar, liable for failing to aide him in the prosecution of Mr. Foreman, a matter wholly unrelated to his criminal representation of Mr. Thompson. Based on the facts asserted by Mr. Thompson and the above case law, claims against the Monroe County District Attorney's Office, Trooper Depew and Public Defender Labar are barred on the basis of their absolute immunity and his failure to state a claim against them.

### C. Plaintiff's Failure to Protect Claim against John Doe Officer, 3-11 p.m. Shift.

Mr. Thompson was previously granted leave to file an amended complaint with respect to his failure to protect claim, including his claim against this John Doe defendant.. The Court specifically advised him that while "[h]e may name John Does as defendants, the case may only continue if a specific person is named against whom a valid claim has been alleged." *See Thompson v. Carver*, Civ. No. 3:CV-16-1529, 2017 WL 2243027, at *4 (M.D. Pa. May 23, 2017).

"Corrections Officer, 3 - 11 p.m. shift," is alleged to have left Mr. Thompson in the cell with his assailant after learning of the assault. (ECF No. 23-2, p. 8.) It is Mr. Thompson's responsibility to provide the name of this John Doe defendant and the requisite service information to the Court. As previously warned, this action cannot move forward strictly

-12-

against an unidentified defendant. Plaintiff has yet to identify "Corrections Officer, 3 -11 p.m. shift" by name. At this point the John Doe defendant is the sole remaining defendant but the Court cannot properly serve him without Mr. Thompson identifying him. Accordingly, Mr. Thompson's claim against this John Doe defendant will be dismissed.

### D. Motion for Counsel

This is a civil action, not a criminal one. Hence the plaintiff has no constitutional or statutory right to appointed counsel. *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002). Nor can the court compel a lawyer to represent an indigent plaintiff. *Tabron v. Grace*, 6 F.3d 147, 153 n.1 (3d Cir. 1993). Rather, representation for an indigent is governed by 28 U.S.C. § 1915(e)(1) which only provides that the court "may *request* an attorney to represent any person unable to afford counsel." (emphasis added).

A district court has broad discretion under 28 U.S.C. § 1915(e)(1) in deciding whether to seek counsel, *Montgomery,* 294 F.3d at 498, and the decision can be made at any point of the litigation. *Id.* at 503-04 ("Either the Magistrate Judge or the District Court should have recognized Montgomery's difficulties as they became increasingly apparent and, in light of them, reconsidered Montgomery's motion for appointment of counsel.").

The Third Circuit has provided guidance for the exercise of the district court's discretion. At the threshold, the court must decide whether the plaintiff's case "has some arguable merit in fact and law." *Id.* at 499 (quoting *Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997)). A court need not appoint counsel "if the indigent's chances of success on the merits are

extremely slim." *Id.* at 500 (quoting *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986))(internal quotation marks and brackets omitted). If the threshold requirement is met, the court then considers a number of factors established by the Third Circuit to determine whether it is appropriate to request counsel for an indigent party. These factors include: (1) the plaintiff's ability to present his own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; (4) the plaintiff's capacity to retain counsel on his own behalf; (5) the extent to which a case is likely to turn on credibility determinations; and (6) whether the case will require testimony from expert witnesses. *Tabron*, 6 F.3d at 155-57.

"[V]olunteer lawyer time is a precious commodity, *Montgomery, supra,* 294 F.3d at 499, so the district court's "broad statutory discretion" should be exercised "discerningly." *Id.* at 505 n.10. However, if the case "appears to have merit" and "most of the . . . *Tabron* factors have been met, the Third Circuit "instruct[s]" that the district court "should make every attempt to obtain counsel." *Id.* at 505 (quoting *Parham*, 126 F.3d at 461)(internal quotation marks omitted).

Mr. Thompson seeks the appointment of counsel based on his indigent status. (ECF No. 24 - 25, Mot. for Counsel and Supp. Br.) Notably Mr. Thompson is no longer incarcerated. He resides in Broome County, New York and is awaiting proper identification to work. (ECF No. 25.) Mr. Thompson's ability to communicate effectively in English is demonstrated by his Complaint, Amended Complaint, documents attached to the Amended Complaint, and other filings with the Court. He does argue that he has made any effort to obtain counsel in this matter on his own prior to seeking court appointed counsel. As revealed by the Court's above

-14-

analysis, the facts if Mr. Thompson's case are not complicated or unusual, nor is the law governing his failure to protect claims novel or complex. He was advised of the specific deficiencies of his Complaint and given the opportunity to correct those deficiencies. As noted above, he failed to do so with respect to the named defendants. Additionally, Mr. Thompson does not suggest he undertook any efforts in the past several years to determine the identify of his John Doe Corrections Officer, or that any of his efforts to do so were thwarted by anyone. While Mr. Thompson, like any other *pro se* litigant, would likely benefit from the assistance of a lawyer, but his claims do not warrant appointment of counsel.

Normally the Court would grant leave to amend if it was possible for Plaintiff to cure the deficiencies in his pleading. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). However, because this is Mr. Thompson's second attempt at filing a meritorious complaint, the Court will not grant Plaintiff another opportunity to amend as doing so would be futile. *Shelley v. Patrick*, 481 F. App'x 34, 36 (3d Cir. 2012)(nonprecedential). Accordingly, the court will deny Mr. Thompson's motion for counsel as moot.

An appropriate order follows.

                                            **/s/ A. Richard Caputo**
                                            **A. RICHARD CAPUTO**
                                            **United States District Judge**

**DATE: June 16, 2017**